KLEES, Judge.
This personal injury action was brought under the Fourth Amendment of the U.S. Constitution and 42 U.S.C. § 1983 as well as under the Constitution of the State of Louisiana, Art. I §§ 2, 4 and 5 and Art. XII § 10(A) and under Louisiana Civil Code Arts. 2315 and 2320.
On January 15, 1975, pursuant to a valid search warrant NOPD officers instituted a search for controlled dangerous substances at plaintiffs’ dwelling. Five children and a sitter were present. Plaintiff-Mrs. Williams, who suffers with a rheumatic heart condition, arrived almost immediately. Plaintiff-Mr. Williams, a recent stomach surgery candidate, arrived thereafter and allegedly became boisterous and interfered with the search. He was handcuffed and placed in a chair in the kitchen. A search of the home produced a small vial of white pills subsequently identified by a neighbor, Vincent Smith, as his nitroglycerin pills left in the house while he was doing tile work.
Mr. Williams was arrested and charged with possession with intent to distribute a controlled dangerous substance and with intimidation of a police officer. Crime lab tests on the questioned substance identified it as nitroglycerin. The narcotics charge was refused by the District Attorney’s Office, the intimidation charge was accepted, but dismissed later for lack of evidence.
Mr. Williams brought suit against participating officers, McNeil, Kirkpatrick, Lewis and Reiher, against Clarence Giarusso individually and as superintendent of NOPD and against the City of New Orleans. He charged the officers with exceeding their authority and with unreasonable search and seizure and sued for intentional false arrest, loss of reputation, assault and battery, mental anguish and worry, property damage, and punitive damages under 42 U.S.C. § 1983. Defendants answered claiming that the search had been effected with probable cause and averred that plaintiff provoked and assaulted the police officers. Mr. Williams filed a supplemental and amending petition joining Mrs. Williams as an additional plaintiff and sought further damages for loss of earnings.
At the trial the jury found in favor of plaintiffs and against defendant police officers and NOPD in solido and awarded each plaintiff $4,000 actual damages and $15,000 punitive damages. The trial judge adopted this verdict and additionally cast the city in judgment. Defendants have appealed this decision.
ISSUES
Whether the jury erred in finding a lack of probable cause to arrest Mr. Williams for possession of a dangerous substance?
Whether the jury erred in finding a lack of probable cause to arrest Mr. Williams for public intimidation of a police officer?
Whether the $8,000 actual damage award is supported by the evidence?
Whether the court committed reversible error in instructing the jury on the availability of punitive damages in a complaint based on 42 U.S.C. § 1983?
Whether the court abused its discretion in allowing Dr. Hauser to testify concerning Mr. Williams condition when the petition contained no claim for pain and suffering?
Whether the court erred in denying plaintiffs’ attorney’s fees under 42 U.S.C. § 1988?
The record reveals the police officers obtained an Order of Search of the questioned dwelling based on information received from other police officers, previously reliable informants, and personal surveillance, all of which was set out in the application for the warrant and entered into evidence as Exhibit D-2. The search produced a small bottle containing an unknown substance from which Officer Kirkpatrick concluded probable cause existed to arrest Mr. Williams for possession of a controlled substance, L.S.A.R.S. 40:968. At trial the jury obviously found the probable cause to arrest lacking.
*953 L.S.A.C.Cr.P. art. 213 empowers a peace officer to effect a warrantless arrest of a person when “(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer.” As explained in State v. Billiot, 370 So.2d 539 (La.1979), cert. den. 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979), probable or reasonable cause exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime. Although mere suspicion does not justify an arrest, the officer does not need proof sufficient to convict. State v. Haynie, 395 So.2d 669 (La.1981). To determine the existence of probable cause, the court must examine facts and circumstances within the arresting officer’s knowledge, in light of probabilities and practical considerations of everyday life on which reasonable men could reasonably be expected to act. Brinegar v. U.S., 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), State v. Linkletter, 345 So.2d 452,453 (La.1977). In affirming a lower court finding of probable cause to arrest, the Louisiana Supreme Court stated “The Constitution requires only that an officer’s actions be justified against an objective standard of probable cause; it does not require that the state be penalized for a purely subjective mistake by an officer.” State v. Collins, 378 So.2d 928 (La. 1979), cert. den. 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980), citing prior jurisprudence.
Appellees contend that a jury may properly ignore even uncontradicted testimony that it finds unworthy of belief, Hall v. Kaiser Aluminum Co., 329 So.2d 251 (La. App. 4th Cir.1976) and that the Court of Appeal should presume that the jury resolved all factual conflicts in favor of the party for whom the verdict was returned, Brown v. Hartford Ins. Co., 370 So.2d 179 (La.App. 3rd Cir.1979). This presumption, however, cannot stand if the appellate court concludes that the jury reached a manifestly erroneous decision.
The Supreme Court reversed a conviction for lack of probable cause to arrest in State v. Di Bartolo, 276 So.2d 291 (La.1973), where police made an illegal and warrant-less entry into a dwelling to conduct surveillance and discovered defendant carrying drug paraphernalia in a second floor hallway. In State v. Mendoza, 376 So.2d 139 (La.1979), information from an untried informant, coupled with police observation of defendant’s conduct, which was “not inconsistent with innocent pursuits,” did not provide probable cause sufficient to convict defendant of possession of cocaine.
Here defendant-officers possessed a valid order to enter and search the dwelling. Nonetheless, in State v. Herbert, on rehearing, 351 So.2d 434 (La.1977), which involved a warrantless search, the Supreme Court through Justice Tate found no probable cause to arrest present and restated the Court’s previously established rule that the circumstances under which an officer acts in making a warrantless arrest must show that criminal conduct is more probable than noncriminal activity. Equivocal conduct does not afford probable cause for a war-rantless arrest if the possibility of criminal conduct is no greater than the possibility of innocent behavior. Circumstances occurring before and surrounding the arrest indicate a likelihood of Mr. Williams’ criminal involvement.
In addition to the drug charge, Mr. Williams was charged under the public intimidation statute. Plaintiffs maintain that probable cause for this arrest was lacking while defendants claim that cause existed or alternatively that cause to arrest on drug charges justified the arrest for intimidation.
Public intimidation is the use of violence, force or threats on any of the following persons with intent to influence his conduct in relation to his position, employment or duty: “(1) public officer or public employee, ...” L.S.A.R.S. 14:122.
The charge was accepted by the District Attorney’s office, but later dismissed for lack of evidence.
*954 Plaintiffs contend that officers did not have probable cause to arrest Williams on that charge and that he, in fact, assisted the officers in their search. Appellants, however, claim that probable cause did exist and testified that Williams was obnoxious and disruptive during the search. They further allege that Williams informed them that he was a powerful man and would cause them to lose their jobs.
James Lewis, a fourteen year veteran of the NOPD, testified that Mr. Williams became abusive and “He told us he didn’t care what kind of paper we had or Order of Search. He was a very powerful man. We had no right to be in his residence and he knew a lot of judges and by tommorrow morning he would have our jobs.”
William Reicher, a fifteen year veteran of the NOPD, testified that Mr. Williams, “told his wife to get on the phone and call Jim Garrison and get Rudy Becker on the phone. I’ll make these S_of B_ sorry they were in his house. I’ll have their job. You’ll come back and get it back again, and you’re fooling with a powerful person. I’ll get Rudy Becker on the phone.”
The crime of public intimidation requires specific criminal intent. State v. Daniels, 236 La. 998, 109 So.2d 896 (La. 1959). It is not the intentional use of force or threats upon a public employee that completes the crime, but rather the use of force or threats upon him with the specific intent to influence his conduct in relation to his duties. Id.
We find that sufficient probable cause existed to arrest Williams for intimidation of a police officer.
Thus, while we find that there was no violation of 42 U.S.C. § 1983, we do find that there is sufficient evidence to sustain plaintiffs’ claim for damages under LSA C.C. arts. 2315 and 2320. We must agree that plaintiffs have proven by a preponderance of the evidence that the officers who participated in the search and ultimate arrest of Mr. Williams went beyond the bounds of ordinary care in the performance of their duty.
ACTUAL DAMAGES
Appellants cite Calecas v. Prieur, 384 So.2d 584 (La.App. 4th Cir.1980), in support of their contention that the court erred in fixing actual damages absent definite proof. While Mr. Williams prayed for damages for assault and battery in his initial petition, he cited no personal injuries sustained. Appellees now urge that his personal injury claim was incorporated in the supplemental petition in which he joined with Mrs. Williams. The evidence in the record concerning plaintiffs’ personal injuries and testimony to that effect does not sustain the actual damage award. Mrs. Williams testified at trial that she was upset immediately after the arrest and saw a doctor who administered shots to quiet her heart. In a prior deposition, she testified^ that Dr. Breaux, whom she saw the day after the arrest, had not administered medication, had given her a check-up and had not opined about the arrest’s effects on her heart, but said she needed a rest. The emergency report from Methodist Hospital indicates Mrs. Williams’ rapid heartbeat and lack of two valves, but its principal findings indicate a regular rhythm of heart. Dr. Hauser, who first examined Mrs. Williams October 13,1975 for chest pains, diagnosed rheumatic heart disease of a congenital rather than traumatic nature and did not believe anxiety would create symptoms related to her cardiac disease.
Dr. Hauser performed surgery on Mr. Williams for removal of % of the stomach due to long-standing gastrointestinal problems. Mr. Williams admitted that he dicl not visit the doctor immediately after the incident to ascertain any worsening in his condition. Dr. Hauser’s only other contact with Mr. Williams was an August, 1976 examination for chronic fatigue which registered normal. As no causal connection between Mr. Williams’ arrest and any of plaintiffs’ medical ailments exists, damages for such should be denied. Plaintiffs claimed property damage. Police denied any damage done. Nonetheless the jury obviously found that some damage was *955 done. Our review of the record discloses that the jury’s award of $4,000 to each plaintiff was clearly wrong and an award of $1,250 to each plaintiff is adequate to compensate them for the damages they sustained.
PUNITIVE DAMAGES
Appellees contend that the punitive damage award can not be disturbed on appeal because the issue is not properly before this court. The trial judge instructed the jury that punitive damages are allowed in Louisiana State courts for violations of rights secured by 42 U.S.C. § 1983. When the jury instruction was given, no objection was raised by the appellants: Therefore, the appellees argue that the appellants have waived any defect in the trial court’s instructions to the jury by failing to object to the instruction prior to the time the case was submitted to the jury. La.C.C.P. art. 1793.
The appellants assert that a literal application of C.C.P. art. 1793 is inappropriate because the trial judge committed manifest error by giving a jury charge directly contrary to Louisiana law. The appellants urge this court to apply the general principle enunciated in C.C.P. art. 2164. That article in relevant part states:
The appellate court shall render any judgment which is just, legal and proper upon the record on appeal.
The Louisiana Supreme Court in Ricard v. State, 390 So.2d 882 (La.1980) decided the narrow issue of whether punitive damages may be awarded in a suit brought under 42 U.S.C. § 1983 in our state courts. In Ri-card, Justice Marcus denied an award of punitive damages to the plaintiff who had brought suit under § 1983 against the State of Louisiana and a state trooper. The court determined that state law, specifically La. C.C. art. 1934(3), was the correct standard to be applied in an award of damages in a § 1983 action filed in state court. The court decreed that punitive or exemplary damages may not be awarded in such a suit.
Accordingly, we reverse the judgment of the trial court as to the award of punitive damages.
ATTORNEY’S FEES
Appellees request reversal of the trial court’s decision denying attorney’s fees in this matter. As they have neither appealed nor answered the original appeal we may not consider this issue. See Act LSA-C.C.P. art. 2133.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is hereby amended as follows:
The judgment in favor of plaintiff Betty Williams, and against defendants, Robert McNeil, James Kirkpatrick, James Lewis, William Ryer, Clarence Giarusso, individually and in his capacity as Superintendent of the New Orleans Police Department, and the City of New Orleans, in solido, in the sum of Nineteen Thousand and No/100 ($19,000.00) Dollars is reduced to the sum of One Thousand Two Hundred Fifty and No/100 ($1,250.00) Dollars together with legal interest from date of judicial demand and for all costs.
The judgment in favor of plaintiff Tommie J. Williams, and against defendants, Robert McNeil, James Kirkpatrick, James Lewis, William Ryer, Clarence Giarusso, individually and in his capacity as Superintendent of the New Orleans Police Department, and the City of New Orleans, in solido, in the sum of Nineteen Thousand and No/100 ($19,000.00) Dollars is reduced to the sum of One Thousand Two Hundred Fifty and No/100 ($1,250.00) Dollars together with legal interest from date of judicial demand and for all costs.
REVERSED IN PART.
AMENDED IN PART.
SCHOTT, J., concurring with written reasons.